Plural argument, and I'll give you 15 minutes per side. Good morning. I am reserving five minutes for rebuttal. I was hoping Judge Cole might be on the panel from Columbus. I don't know if either of you are aware of Muirfield in this area. Muirfield is where the memorial tournament is played each year. It is part of the national program of professional golfers. Tiger Woods has been there and has won a number of times. This is a very special place that has been created by Jack Nicklaus. There is Council Judge Guy, let me interrupt. I take it where you're going with that background is that there is reason to want the homes that are around it to look good and you can't have half a roof looking one way and half a roof looking another. You are exactly correct, Your Honor. And so Jack Nicklaus put into the creation of this area that there are deed to make sure exactly what Judge Guy has just said, that the roofs will be made in such a way that when the blimp goes by and you look at it on television. Just the roofs you can see from the golf, is that correct? It's not all the roofs in the community, it's just the roofs that you can see. It's all the roofs in Muirfield. The Muirfield village, the design standards apply to a very large area. Regardless of whether you can see them from the golf course? You don't see them from the golf course, you see them from the blimp. And the blimp sees a very large area. But the point of it is. The design guide itself says roof material on homes abutting the Muirfield village golf club property and certain other places that are visible from the golf club property. And this property. Your answer is that Judge Gibbons suggests that the answer that you gave is not correct. No, I think the. How do you respond to her reading of the actual language? It wouldn't. In this. Does that include all the roofs in this development? That language? It wouldn't matter because they're just across the street from the golf course. That doesn't answer my question. There are some that aren't just across the street from the golf course, I assume. Yes, I'm sure that that's true. Those wouldn't be covered by this. That's all I'm asking. That may be. I don't know. I guess the proper answer is I really don't know how far it would extend and at what point the design committee. It goes a little bit to how likely it is that the insurance company is going to know about this limitation if it only applies to some of the houses as opposed to all of them. That's the only reason I ask it. I understand your question. And their who had no knowledge that there was even such a restriction. I know. I'm a little baffled by that contention. It's hard to see how an insurance company that's a large national insurance company, even if they dealt with someone locally, is supposed to know more than the homeowner about the restrictions on the homeowner's property. Let me address that. I appreciate you're asking that question. Twofold. One, we're not speculating. They did know. The testimony is from Mr. Seibauer, the claims manager, that he had actual knowledge of the requirements. We had time at the claim was made. Is there not? Is there indication that state isn't your indication, isn't your contention that State Farm, in part, that State Farm should have known at the time they purchased the policy and counseled the rights about that at the time they purchased the policy? Yes, and Mr. Seibauer knew about it for years beforehand. Is Mr. Seibauer the one who sold him the policy? Mr. Seibauer is not the one who sold him the policy. He's the claims manager who inputted that information into the computers of State Farm so that that data is knowledge of the employer, of the insurer. And when did he input it? Years beforehand. He knew about it beforehand and he inputted it. What's his relation to the person who sold the insurance? I'm sorry? What's his relationship to the person who sold the insurance? I'm asking sort of a corporate structure kind of question here. Is it that person's supervisor or somebody in a different office of a huge company or what? The insurance agent is the agent of the company. The company in its information database. He's over in a separate building that says agency of this company. I'm just trying to get at how close they are on the wiring diagram. I don't think that you would find them close in the wiring diagram. We're talking about a large company. Doesn't that cut against your argument? Not at all. Not at all. Because State Farm is a huge company. If you would use the... I hardly expect as a sort of a requirement for the basis for some of your claims that you have to know all the bits of information that anyone in a huge company knows when you sell someone a policy as opposed to just what's in the terms of the policy. As a matter of fact, this is for a jury to decide, if we would use the logic that you are expressing, Your Honor, when you have a large, large, multi-billion-dollar corporation with lots of lines and lots of connections, it perhaps would suggest that the corporation has no knowledge because the knowledge is not possessed by the particular person at a particular time. The knowledge of a large corporation can be found by their database. At a minimum, it's undisputed that your clients had no knowledge that they were subject to this restriction, correct? That's correct. They didn't buy the house yet. And so they, when they went to see State Farm, there's no indication that they said to State Farm, here we are in this development with this description, right? No. With this restriction. No, they told them that they were... And so they... And State Farm knew Muirfield had these restrictions. They didn't know. You don't know whether it applies to all the houses in Muirfield. I mean, I'm just trying to figure out how State Farm is supposed to figure out that even if it has this particular restriction somewhere in its computer base, how it's supposed to figure out that this particular house is covered by the restriction if it's not told and your clients don't even know that the restriction applies to them. How is the insurance company supposed to know? I think that's what we flesh out at trial. I don't think that that's a summary judgment killer. The reason I asked the question along those lines is it seems remarkable that there would be a legal duty to find that out, not whether they actually found it out, but whether there's a legal duty to find that. What's your strongest case for saying that an insurance company, knowing that you would probably want additional insurance, doesn't tell you you need additional insurance? I mean, that's what this case is about, right? I mean, the bottom line is you're saying they should have said, you need to get something in this contract that covers this or you could be at risk of having to pay a lot of money. That's the crux of your argument, right? That's one of them. That's not all of them. Well, the one that it is seems to be problematic unless you have cases which say an insurance company owes you the obligation to advise you about additional insurance that you need. Now, usually they do that. I think they like to sell more insurance. Sure, of course they like to sell more insurance. But are there cases that say that they have to advise about risks that are not covered in the insurance that's explicitly in the contract? Well, where there is a fiduciary relationship and a fiduciary relationship that causes that. A fiduciary relationship can cause that. Is there anything else that can cause it other than a fiduciary relationship? The superior knowledge. A duty to disclose arises when there is a fiduciary or confidential relationship or one's party's superior knowledge of essential facts renders nondisclosure inherently unfair. Do you have any cases where that doctrine applies to an insurance company not advising about additional needed insurance? As to an insurance case, I don't know. I can't say that for sure. I see your time is almost up. I wanted to ask you one additional question. And that has to do with your argument about the design standard under the provision of the policy which ensures in case the repair has to be up to the standard of an ordinance or a law, right? That's one of the provisions. Yes. Is it your contention that the design standard is one of those items, an ordinance or a law? Two points on that. The administrative code has been found. I'd say yes or no question. Is it your contention that the design standard is one of those words that are in the contract, law or ordinance or whatever it says? No, it has been omitted. You're correct. It has been omitted and that is the mistake. But you're not making an argument that that design standard is a law for the purposes of that must cover increased costs. Laws, ordinances and the requirements of the deed stages. They should have put that in the contract. But you're not saying that it's already in the contract. No, I'm not. I'm saying that the law or ordinance is included because of the administrative code which is a law. The state administrative code. That wasn't my question. I understand. If you say the administrative code, then we have to go and interpret the administrative code. Well, the administrative code is part of a law and ordinance. Right, but it arguably doesn't require what you're asking for. But it's not necessarily part of the contract. The law and ordinance exception is and he bought the laws and ordinances extra policy. There's some adjectives modifying that, but I think we'll let you talk about that in your rebuttal time. Thank you very much. Mr. Gams, is that the correct pronunciation? Good morning. Mark Gams on behalf of State Farm Fire and Casualty Company. To answer... A very good neighbor for this one. Well, I guess it depends on... That's the argument, right? Well, you go around saying you're a good neighbor and then you don't act like a good neighbor. Well, I believe being a good neighbor is living up to your end of the contract. And I believe that's what State Farm did. I guess I was being flipped. But he does make an argument that the law and ordinance should cover increased costs. But you're not saying that it's already in the contract. No, I'm not. I'm saying that the law or ordinance is included because of the administrative code. There's some adjectives modifying that, but I think we'll let you talk about that in your rebuttal time. Thank you very much. Mark Gams on behalf of State Farm Fire and Casualty Company. To answer... A very good neighbor for this one. Well, I guess it depends on... That's you have some sort of fiduciary responsibility arising from your advertising. That's in the brief somewhere. It is in the brief, but... So what's the quick answer to that? It's not in the law. You don't create a fiduciary relationship through advertising. The case he cites is an appellate court case in Ohio called Boffman. And in Boffman, what happened was there was a change in the uninsured motorist law in Ohio. It kept changing over a period of about 10 years. Originally, State Farm, through many of its agents, were advising the insureds of the changes in the uninsured motorist law. Then there was a change in the law again. They didn't advise them of that. of the changes in the law. And this last change in the law, some people could have not insured all of their vehicles for uninsured motorist coverage and still had coverage. That was the gist of it. It was an uninsured... It was a motion for summary judgment type case. The court did mention advertising, but that's not the basis for the reason to create a fiduciary relationship. Even a good neighbor doesn't have a fiduciary obligation. It doesn't. It doesn't. And in this situation, the Wrights didn't know their agent, have never met their agent to this day, Mike McClaskey. Mr. Wright met the agent employee for the first time on the day that he went to get coverage. Didn't ask any questions about, you know, hey, I've got this Muirfield Village rule that says I've got to replace my roof instead of repair it. Does this cover that? Those questions weren't asked. How would Mr. C. Bauer know about this problem? Mr. C. Bauer is a claim team manager who is in the claims department. In other words, when you have a claim, regardless of what it is, there's a claim representative level and then they report to a claim team manager. He is a claim team manager. He was aware, in his deposition, he said he was aware that there was a rule out in Muirfield for at least certain properties along the fairway that they had to be replaced and not repaired. How would he find something like that out is my question. Because he previously denied replacing a roof. Because he previously denied replacing it. Yes. Yes. I understand there's no fiduciary relationship, but it seems like a big, it seems like that would be something you might want to alert people to. Well, I believe in Ohio, when you start talking about an agent-principal relationship, it has to be, the agent has to be acting within his scope of employment and work. Here we have a claims person. There is no evidence in the record at all that the agents were aware of this rule or that the underwriting people were aware of this rule. It's, as you said, a large company and we're not talking about a soliciting agent. We're not talking about an obligation, but wouldn't you agree it seems like a nice-to-do kind of thing? I mean, it would be good for you, it would be good for them. Well, Your Honor, I guess it's the type of thing that you would expect when you're moving into a place to know your homeowners association rules. There has to be hundreds, if not thousands, of homeowners associations just in the state of Ohio to put the onus on an insurer to learn all of the rules of every homeowner association and then trying to keep up with, maybe they amend their rules, maybe they change them. And then try to provide that information to its insurers. It just seems like an extra contractual requirement that the Ohio law doesn't burden insurers with. We'd have had a different case had the rights gone in instead to the agent. We're living in this development. Here are the restrictions. I need to make sure that my homeowner's insurance appropriately covers me for these eventualities. And then if there had been misrepresentations or if, say, State Farm had quoted prices and the homeowner had decided whether to purchase the less costly insurance. I mean, you have a whole different scenario. But State Farm's duties, whether they're fiduciary or not, start with the homeowner's communication about the risk that is sought to be insured. I would agree, Your Honor, that it would be a completely different story. Where's that principle sort of captured in Ohio case law? In all of the cases that were cited, I believe on both sides of the brief, regarding fiduciary duty, under Ohio law, it is not considered that there is a fiduciary duty between an insurer and an insured unless both sides understand that the agent is giving the insured additional knowledge, usually at the request of the insured. And that the agent is representing to the insured that this is what you should do. So if the, let's say that the homeowner doesn't give any information, but the agent starts giving advice and asking questions beyond what the homeowner communicates, there is some potentiality for creating a relationship that wouldn't ordinarily exist. Possibly, but not in this scenario, and here's why. There is no coverage that State Farm could have given. There's no option that State Farm could have given to the rights to cover for this scenario. So that's just not a policy that would be, the policy they claim they had is not a policy that would have been written. Correct. Correct. The accidental direct physical loss only goes to the area that's damaged. You can't give any insurance policy you want to? Nope. Well, because State Farm has to provide its insurance policy to the Ohio Department of Insurance. Now, to say that, so the agent can't just say, well, let's go ahead and write this. You know, there's policies, there's options. You can only write what you've been, what the regulators have approved your writing. Is that correct? Correct. Now, I'm not here to state. We're getting a field, but I was just interested. Obviously, there's three claims here, breach of contract, misrepresentation, and bad faith. I think we've already talked about the misrepresentation, but the fact of the matter is that the rights didn't even know that they had this requirement until after their first loss demonstrates that they certainly weren't relying on anything that State Farm told them because they didn't have that information. With regard to the breach of contract, the policy states that State Farm pays for accidental direct physical loss. It's not in controversy here that only part of the roof was damaged from the wind, and State Farm was willing to pay that amount. It wasn't willing to pay the amount that was forced upon it, forced upon the insureds by the covenants. Council, I have a question related to what you're now discussing. Are you saying that if the homeowner had come in fully aware of their covenants and said we have to have a policy provision that says if any part of our roof is damaged, the whole roof will be replaced? Are you saying they could or could not have gotten that kind of coverage? Your Honor, Judge Guy, they could not have. The agent would have said no, we cannot provide that type of coverage. Thank you. Is that in the record? Is that argued by you below? I mean, it's a pretty strong argument, but I didn't see it in the briefs. I don't believe it was other than the fact that we stated that the policy says that we insure against accidental direct physical loss. What if you had a harsher situation, arguably, where somebody comes in and says I want this homeowner's insurance, and there's a clause in there that says it just doesn't apply if any of your rooms have been rented out, for instance. Okay. And the person comes in and says I want this homeowner's insurance, big smile on his face, and says, and by the way, I plan to rent out in a few weeks, in a few months, I plan to rent this out. There's no obligation for them to say, you know, this is going to wipe out a lot of the protection. Maybe you should do something about that? Or is the law pretty clear that that's just caveat emptor? You don't have to warn them, just sell them the policy, even though it's pretty clearly not the policy, with the information given, that you would have. Now, I know that you can distinguish that from your case, but I'm asking about that case just to see what the law is. Well, honestly, Your Honor, I believe the law is clear that as long as he didn't ask would I be covered if I had those, then the only obligation the agent has is to provide the coverage that's requested. Now, if the agent had said something like don't worry about it, they're never going to find out, then there's going to be coverage, and State Farm is going to be responsible for its agent's actions. But in this situation. I was just talking about whether in that type of situation there's any kind of law that implies an obligation to say, this is clearly not the contract that you need to be buying. You're saying there's not. It's just up to them to find out what kind of contract they need to buy. I believe that is the state of Ohio law. I want to ask you a minute about this administrative regulation. I mean, there are questions about whether it falls within the language of the contract, but that's not really what I'm asking about. The district court, as sort of an alternative ruling, attempted to give an interpretation to that regulation. What would your interpretation of the regulation be in its application to this case? Well, Your Honor, are you referencing the issue about possibly matching, the matching of the wood shakes? Right. All right. Well, first of all, the code itself, the first sentence of the code says, nothing in this code shall give rise to a private cause of action. Now, having said that, that doesn't mean that everything in the Ohio administrative code isn't just part of the common law. Well, they're not really trying to bring a private right of action. I mean, they may have, I mean, they may touch on that, but I think the argument that they would have to make is that somehow that regulation affects the contract between the homeowner and state farm. Well, and as Judge Economist stated, he wasn't prepared to state that every wood shake roof in Ohio would have to be replaced and not repaired. It goes to the same situation here. I would think that the court could take judicial notice that cedar wood turns gray when sun and water are on it for a while. That's the way a wood shake roof exists. Now, the reason why the replacement is needed here is not because of matching, because eventually it will match. It's because of the Muirfield Golf Association's request or demand or covenant that all roofs be replaced and not repaired. So the fact of the matter is that the Ohio administrative code and the whole matching issue isn't really even part of it here because there's no evidence that the matching, that the wood shake won't eventually come together. There's an affidavit in the record that indicates that it wouldn't have matched initially.  Again, it's not in the record, so I won't go on to it, but clearly there are ways to match it, but it will match. And again, that came up in the memorandum contra on the motion for summary judgment for the first time. There wasn't any claim for it before that. This was not a matching case. Does that provision require your contracts include something that they currently don't? No, because, for instance, let's think about siding, vinyl siding. State Farm has a duty to match. Oftentimes when siding is damaged, the original siding is not made anymore, so you have to get something that looks. The standard is it has to be a reasonable replacement. And in the wood shake roof industry, a reasonable replacement is a repair. Would the Ohio insurance regulators examine the contract to see your contracts that they were approving, presumably to determine whether there was compliance with these sorts of provisions, or would that not be a part of their process? Oh, I'm sure that it would have and whether they also adhered to those provisions. But the provisions are in there exactly as to how they are to replace with similar construction and for the same use on page 11 of the policy. We will pay the cost to repair or replace with similar construction and for the same use. And that's what they did. There's nothing further. Thank you. All right, Mr. White. Thank you. I am struck by the fact that my client bought the policy before he bought the house. The State Farm is saying he didn't read the terms of the policy when State Farm didn't give him a copy of the policy. The evidence is that my client... People buy insurance all the time without having the contract. How is it... They rely on the contract that they're going to get until they get it and read it. How is it that the court can say my client didn't read the policy when they have an obligation to give him a copy of the policy so he could read it? There is case law to hold that... You never gave him a copy of the policy? Not until after the damage to the proof. How soon was that? About five months, six months after he bought the policy. No, more than that, maybe eight months after he bought the policy. You never got a copy of the policy for eight months? Did State Farm concede that? Pardon? Did State Farm concede that? Do they concede that? They say they sent a policy. My client says he never received a copy of the policy. He says he uses the fact that he had to ask for another copy. Not for another. He never got the first one. Well, but his conclusion that he didn't get the first one is based on his having to ask for the second one, right? He didn't get a copy of the first one. That's an issue of fact before the court. That's for the jury to decide. He did not have a copy of the policy. Judge Guy, interrupting here. If they had gotten a copy of the policy the first day they went in to buy the insurance, it wouldn't have tipped them off to anything since they weren't aware of the requirements of the covenants at that time. At the time they bought the policy, Judge Guy, you're correct, because they didn't yet know what is going to be. Now, so far as the administrative code, I think you can expect State Farm to be changing their policy as a result of the Cullen case that we talked about and the Supreme Court case of Ohio in which the Supreme Court has ruled that that administrative code is to be considered a part of the duties of an insured. And while counsel argued, as did the trial court, that Section B where it says it doesn't give a right of state action should disqualify the use of the administrative code, the Ohio Supreme Court now has said it is part and it must be considered. And so the jury would be allowed and the trial judge erred in saying that the administrative code was not applicable. His exact argument was made. The exact argument was made by State Farm to the Ohio Supreme Court. The Ohio Supreme Court rejected that. Well, the court didn't say, though, that the administrative code provided a private cause of action, did they? Oh, no, no. The Supreme Court said that the code section, what they had to do in the 23 class action case, is to consider the evidence as to whether or not that section was violated. They didn't question whether or not it's a duty. The Supreme Court said it was the obligation of the trial court to see whether that duty was violated. They accepted the administrative code as creating that duty. Now, as to the law about creating a fiduciary relationship by advertisement, the Boffman's case says State Farm, specifically the defendant in this case, has purposely sought to set itself apart as the most trustworthy insurance company, the one that treats its customers as neighbors. After years of profiting from this marketing strategy, State Farm cannot disavow this attribute when it is financially advantageous. We sustain appellants first and second. The attribute of being a good neighbor is not the attribute of a fiduciary, though, in common terms, is it? The Boffman case, Ohio law, and that case has never been overruled. It was settled before it got to the Supreme Court, although it was filed. State Farm settled it beforehand. That case- As for the logic of saying I'm a good neighbor, does that make you a fiduciary? It means that the jury can consider that because the language, and it's important to understand the language of State Farm- It's not a legal issue whether you're a fiduciary or not. It's up to the jury to determine whether you're a fiduciary in Ohio. The jury may consider that as whether or not there's a fiduciary relationship, and this Boffman case says that he could go to trial on that question. So that's Ohio law. And so that's why we believe that that case is so important. Who decided that? The Court of Appeals? Yes, the Court of Appeals of Ohio. One of the districts? The 9th District, and that is part of our case law. That's not a trial. Is this golf course in the 9th District? No. That doesn't make it non-binding. It is Ohio law. There's no Ohio law to the contrary. If there's nothing further, I believe your time is up. Thank you. But I did want to say one thing, if I could. I'll never get a chance to say it again. My client is right. All right. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you. Court may call the next case.